All right, Jones v. Colvin. Mr. Duncan. Good morning, Your Honors. May it please the Court, Dana Duncan on behalf of Elena Jones. The case comes before the Court on two issues outlined in the briefs, the first being that the ALJ erred by failing to provide sufficient support in regards to whether she met her equaled listing 1.04, and the second being whether the ALJ properly handled the report of a physician's assistant, a non-recognized medical source. Let's start this argument by noting that this is a deferential standard. The problem with this case is not just these two issues. The problem with this case is one of articulation. The ALJs in these cases are behooved to articulate and express specifically the grounds for their findings. The fact that both of these particular cases are more egregious in the fact that the ALJ failed to really specify specific information supporting his conclusions. In this particular case, and I'll address the first issue first, the ALJ looked at listing 1.04 and his finding, he basically stated in one paragraph both, there are three parts to listing 1.04, A, B, and C. There are three separate grounds upon which a claimant can be found disabled. He lumps them into one. Then he proceeds to state, radiological evidence has demonstrated signs of degenerative disc disease and neuroforminal narrowing in the lumbar spine. Physical examinations have been sporadically positive for a sciatic pain, limited spinal range of motion, decreased lower extremity strength, and positive leg raising. The record does not consistently and repeatedly document the full symptomatic picture required by the listing as the claimant has no motor sensor reflex loss and is unable to ambulate effectively. He basically, in one paragraph, dispenses with all three grounds without examining the specific evidence on each point or addressing it. Moreover, the point that he said the record does not consistently and repeatedly document the full symptomatic picture required by the listing, that raises a red flag, which this court has already addressed and read forward in 2013, which is that you don't have to have these symptoms over and over and over or consistently during the period of question. What we have here is we have multiple medical findings that are consistent. We have Dr. Sikanowitz's examination in 2011. We have an MRI. He noted that there was a herniation of the disc. There was encroachment on the nerve root at L3, 4, and 5, degenerative changes at L4, 5, and L5, S1. We have the consultative examination of Dr. Sloan. She noted that the claimant was positive for straight leg raising. We have also, and if you look, I know that the government raised the issue about sensory loss in its brief, but if you look further in the definitions under 1.00 sub C and sub E, it talks about what is and what is not sensory loss, but even that's in existence. At page 14 of the records, Dr. Sikanowitz noted that there was a trace ankle jerk on the right and ankle jerk on the left, two out of two positive, knee jerk, two out of two bilaterally. What about the inability to ambulate effectively? Isn't the requirement under 1.00 of that subsection B pretty precise? Under sub 3, yes. All you need to do is prove one of the three. It is not, I tried to think of an analogy. You have to show that you just cannot walk, essentially. You have to show the use of two crutches, two canes, or a walker, and where do we have that in this case? Well, that's sub C, and you don't need to establish that in order to be found, to meet the listing under A. Okay. The ambulation is, I believe, C. Well, the inability to ambulate effectively is defined in 100.B.2.B.1. Yes. And that's what I'm trying to get at, and I apologize if I'm wrong. Where is the evidence in the record to support that? The fact that she was using a cane, the fact of her testimony, the fact of her needing assistance in the shower, that's in the record repeatedly. The specifics in there, it's a list, but it's not a comprehensive list. And if you look at the definition, it says specifically. The question I have, just to follow up on the earlier point, it seems that the real, that she can walk, and that the real difficulty here was that she required the use of a cane. And there must be just millions of people who require the use of a cane in order to get around. Correct. And so, if we were to rule that a case where the mobility restriction, I mean, there's some evidence here of back pain, but it didn't require surgery. And if we were to indicate that mobility loss under 104, or motor loss, could be proven by those who require the assistance of a cane, I wonder whether we wouldn't be really opening up Section 104 to way, way, way beyond what the drafters intended. Your Honor, and I understand your point, and I probably would agree with you, except that that's not the only issue. The issue also pertains to the other stuff. But let me point out, too, that I'm the first... It goes to ambulatory effectiveness. Correct. As Judge Keenan points out, there are all kinds of ways that one can be ambulatorily restricted in requiring walkers and wheelchairs and everything. But the cane seems sort of the most minor of the various ambulatory impediments. I'm not asking the Court to reverse and grant benefits. The issue in this case is simply that the ALJ never made any attempt to assess her ambulatory behavior. He just makes a conclusory statement that she doesn't evidence that. And that's not even the strongest case. Remember that these are three individual things. A is the nerve root compression with the straight leg tests. B is not even raised. C is the ambulatory. There's a difficulty for an ALJ when the ALJ reviews the record and looks through the record and doesn't find any evidence of something, and then states in the report that he or she didn't find any evidence of that. That's what the ALJ here found. There's no motor loss and no loss of ambulation. Now, the question is, how do you point to a record that's not there? The definition of ambulation requires at least two canes. And the Court noticed there was an occasional use of one cane here, so it concluded there was no evidence. Now, should they go page by page and say this doctor's report contained no ambulatory thing and this doctor contained no ambulatory? I mean, it would be imposing a standard that would be sort of mechanical. I understand your point, Your Honor, but the ambulatory, the C criteria, is the least effective of the three arguments that I'm raising on the listing. The Court said there was no evidence of motor loss and sensory perception. In other words, there was pain, but she had a function of her legs that reacted to reflexes. What you read were the reflexes. I was surprised at what you read. You thought that satisfied it. I didn't think what you read was evidence of motor loss. Well, again, I guess the point that I'm making is there are three specific separate grounds that are involved here. No, but you have to advance the one that you think was satisfied and you think A was your best shot, I think. That is correct. And you read A and then you started reading some evidence that I didn't think, just based on a layperson's interpretation, and that's what the ALJ found, too, that you didn't present evidence to satisfy A. Except that it's not a, it's not, when looking at this, and again, statutory construction, this is a broad list of things. It's a comprehensive thing that has to be established. It's not that you have a checklist, that all of the things in that particular checklist have to be met before you meet the listing. I understand that, but you're pointing to where the error is that you believe is error. Correct. Your first main point was that the criteria of 1.04, A and C, were not satisfied. Correct. And then you went to A and you read some evidence. Now the question is, if that's all you have, isn't the deferential standard satisfied here? Except that it also talks over and repeatedly in the regulation, in the listing, of things such as the fact that there is degenerative arthritis or degenerative disc disease, that there is positive straight leg tests, that there is noted nerve root compression. All of that stuff is there. The list is not mutually exclusive. That doesn't satisfy A. Except that if you require, or you're reading A to B, that every item there has to be met, correct. But every item does not have to be met in order to satisfy A. It gives you a list of evidence that you are to consider and to evaluate. And there's nothing that the judge did in this case that outlines that. All right. Mr. Mervis. Good morning, Your Honor, and may it please the Court. I'm David Mervis on behalf of the Acting Commissioner of Social Security. And I should note, just for the record, that the Acting Commissioner has changed just on Friday. There's a new Acting Commissioner, but that doesn't change. Nothing procedurally needs to be done. You're here with the authority of the new Acting Commissioner. The new Acting Commissioner. Yes, that's correct, Your Honor. We respectfully request that this Court affirm the finding of the district court that substantial evidence does, in fact, support the final decision of the Commissioner. And there are two reasons, two issues that Mr. Duncan, Ms. Jones has raised. The first being that the ALJ found that Ms. Jones did not meet the requirements of Listing 1.04. And I want to pick up directly there and directly with what Your Honor, Judge Niemeyer, was discussing. The requirement is, in fact, that all of the elements of Listing 1.4 are present. And not only that, it's Ms. Jones' burden as the claimant to prove that all the four elements, well, I don't know if there are, depends how you want to parse it, but that all the elements of 1.04 are present. So it's not sufficient to prove that one of them was present or two of them were present. Ms. Jones has the burden of proving that all of them were present. And here, what the ALJ appropriately did was identify that Listing 1.04 was, in fact, implicated by the evidence. So the ALJ noted the requirements of 1.04. As Counsel for Ms. Jones points out, the ALJ noted those requirements. The ALJ then explained specifically what wasn't met, specifically what Ms. Jones had failed to prove. And that is for Listing 1.04 that Ms. Jones had failed to prove motor loss. And with respect to Listing 1.04, excuse me, that would be 1.04A. And then with respect to Listing 1.04C, that Ms. Jones had failed to prove an inability to ambulate effectively. But it's also important to note that in addition to identifying the applicable listing, explaining what the requirements of those listings are, and then specifically explaining what elements weren't satisfied by this evidence, the ALJ went on in the body of the narrative discussion of his decision, the ALJ went on to discuss specific evidence. And so, Judge Niemeyer, you asked what is to be expected of an ALJ. And in certain cases, there may be a simple absence, and it is conceptually impossible to prove, you know, the absence of something. But in this case, the ALJ noted specifically, with respect to 1.04, noted, for example, that there was a note, Dr. Sloan, I believe, noted that she had full motor strength. So the ALJ discussed this. This is Appendix 19. With respect to the ambulation, the ALJ noted numerous times in the decision, Appendix 20 in the ALJ's decision, noting that the state agency opinions noted no definite need for a cane. Noted that, Appendix 19, that Mr. Soule, whose notes and opinion are raised by a plaintiff, but noted that she was ambulating normally. This is Appendix 19. Appendix 19, normal physical exam, ambulating with a cane. Appendix 19, Dr. Sloan noting that she's ambulating with a cane slowly, but that she has motor strength, as I mentioned. And the point being that she's able to ambulate, that Ms. Jones did not prove an inability to ambulate effectively, which is, as Your Honor pointed out, not simply difficulty. It's not simply one cane. The regulations are clear that it's an extreme limitation on the ability to walk. The regulation points out some ways that that could be proved. A walker, two canes. An extreme limitation on the ability to walk. Not simply difficulty, not simply needing some help with a cane or with a railing going upstairs. So the point here, with respect to the listing, is that the ALJ did in fact discuss the evidence that supports the ALJ's findings. So where this Court has remanded in prior cases and other cases for inadequate explanation, this case stands apart. The ALJ here not only specifically explained what wasn't met, but then went on in the narrative discussion, in the narrative portion of the decision, to mention here is the evidence that supports this finding that I've made. So this Court is not left to guess. This Court is not unable to review the basis for the ALJ's decision. And I would point out the same is true about obesity, which Ms. Jones has raised in her brief. The ALJ noted specifically that although Ms. Jones was obese, had this, call it a severe impairment, but that I'm considering this evidence and that I'm noting the body mass index in the record, and I'm considering the effect, the combined effect of that on her functioning. So again, the ALJ explained what he did, explained the substantive basis for his findings. And so we'd ask that this Court find that those findings are supported by substantial evidence, as explained by the ALJ. I'd make a couple of points about the opinion of the physician's assistant, which Ms. Jones has raised in her brief. Again, the ALJ made a specific finding. The ALJ noted the opinion, which as a technical matter doesn't count as a, quote, medical opinion, because Mr. Soule is not a, quote, acceptable medical source. But really for the purposes of this decision, the distinction really doesn't make much difference, because what the ALJ did is noted that this physician assistant made, you know, was a treat, again, there's a technical definition of a treating source, but he was a treating physician assistant. And he gave an opinion, and the ALJ considered that opinion, noted that opinion, and explained that I'm not giving that opinion more than little weight. The ALJ explained why that was, what the ALJ found was the weight that was due. So contrary to Ms. Jones's contention in the brief, it wasn't a blanket rejection, it was a specific explanation of what Mr. Soule opined, and why the evidence failed to support those findings, or those opinions. So we respectfully request that this Court, as the District Court did, find that the ALJ's decision, the final decision of the Commissioner, is supported by substantial evidence and explained here in this decision. So unless this Court has any questions, I would rest on our brief. Thank you. Mr. Duncan. Thank you. I'm going to use my rebuttal time to address the second issue, I guess, which is Mr. Soule's opinion. The decision itself indicates the assessment of the degree of pain and the resulting limitations do not, well, first he says the opinion is internally inconsistent and not supported by the medical evidence of record. His assessment of the degree of the claimant's pain resulting limitations do not correlate. His opinion as to the claimant's absence of work is a significant exaggeration. We have in here that Mr. Soule specifically, at the time, and I believe it's Exhibit 13, had the entire medical record. There's two different places all of the records were produced. The records by counsel at the administrative level obtained the records that supported or that Mr. Soule had been evaluating. They included all of the various records from all the various medical providers, and he had all of those available to him at the time he wrote his opinion. The commissioner wrote SSR 06-3P to express the commissioner's policy in regards to medical sources that are not physicians, because with the age of managed health care, especially people with limited financial resources, they're not going to get in to see a doctor. When Ms. Adams had very limited ability to obtain medical care, she saw two different physicians' assistants. There were times where when she had insurance at a parish, she saw an orthopedic surgeon. Mr. Soule was in the best position and had been monitoring her care. Sure, if the judge wants to say that the day's absence was unsupported, fine. But the rest of this... And there appears to be some exaggeration in Mr. Soule's comment. So the ALJ basically said, I'm just not going to give that overbearing weight. This was an expression of how to weigh the various aspects of evidence in this case, and he didn't reject it, discount it. He discounted it and explained why. It seems to me we deferred. He says it's inherently inconsistent because he reaches conclusions that are totally different from what were said in attached medical documents. He said it's some exaggeration, and so I'm going to discount the exaggeration. But it's there, and the ALJ considered it. I'm not sure what your complaint is really about this, in view of that. Except, Judge, there's nothing that really articulates what he feels is the exaggeration. I mean, it's one thing to say that I considered it or that I find it, but the basis of the deferential standard is that there has to be rationale provided, and he just comes to his conclusion and states it without addressing the specific issue involved, which is that point where he points out what is or is not reasonable. It's not inconsistent or an exaggeration. He doesn't specify anything. I mean, we're talking about findings of five pounds. Was that the exaggeration? Because the state agency limited her to sedentary, which is consistent. Was it the occasional pushing and pulling? Was it the gross and fine manipulation? I don't know, and the court can't. Well, the five pounds is on an occasional basis. The ten pounds is frequent. Or excuse me, it's occasional five pounds, or the way the Social Security defines it is ten pounds occasionally, or less than ten pounds frequently. And so he just said five pounds, which is about basically her maximum weight. So it's not much different as far as that goes. So unless there are any questions, I guess I will finish. Thank you.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Barbara Milano Keenan